KIAM v. STACY et al. (No. 238.)

(Court of Civil Appeals of Texas. Beaumont. June 4, 1917.)

1. LANDLORD AND TENANT ⬄233(3)—ACTION FOR RENT—SUFFICIENCY OF EVIDENCE.

In a landlord's action for rent, defendant's testimony that she owned fixtures in a barber shop kept by her son and had received part of the shop's income for their use, etc., is insufficient to make her liability for the rent a jury question.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 942.]

2. LANDLORD AND TENANT ⬄231(2)—ACTION FOR RENT—ADMISSIBILITY OF EVIDENCE.

In landlord's action for rent, leases between other parties executed two years before the lease in question are inadmissible.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 927, 928, 930.]

3. LANDLORD AND TENANT ⬄231(2)—ACTION FOR RENT—ADMISSIBILITY OF EVIDENCE.

In landlord's action for rent against a party owning fixtures in the premises involved, an assignment of another lease by third parties to the defendant is inadmissible.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 927, 928, 930.]

4. LANDLORD AND TENANT ⬄231(2) — ACTION FOR RENT — ADMISSIBILITY OF EVIDENCE.

In landlord's action for rent against a person owning fixtures in the premises involved, a lease from the plaintiff to defendant's son and codefendant is inadmissible against the mother.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 927, 928, 930.]

Appeal from Harris County Court; Murray B. Jones, Judge.

Action by Ben Kiam against C. E. Stacy and Mrs. Hattie E. Stacy. From a judgment in favor of the last-named defendant, plaintiff appeals. Affirmed.

M. G. Fakes, of Houston, for appellant. Stevens & Stevens, of Houston, for appellees.

BROOKE, J. The statement of the nature and result of the suit is practically agreed to be as follows: This is a suit in which the plaintiff, Ben Kiam, first brought suit in the county court at law of Harris county, against the defendant C. E. Stacy, alleging an indebtedness against said Stacy growing out of the renting of a barber shop, said rentals being due for three months, amounting to $300, setting up his landlord's lien and asking for judgment for the rents found to be due, and for foreclosure of his landlord's lien on the contents of the shop. Plaintiff, subsequent to the filing of said suit, swore out a distress warrant against said C. E. Stacy and his mother, Mrs. Hattie E. Stacy, alleging the aforesaid indebtedness as against both of said parties, under the authority of which the contents of the barber shop were seized. Plaintiff duly filed suit against both aforesaid parties in the county court at law to which said distress warrant was made returnable. The two suits were consolidated and tried as one suit; the de-

fendant Mrs. Stacy having prior to trial replevined the property seized under the distress warrant. Plaintiff's further allegations, besides suing for the rent, were to effect that the storehouse had been damaged in the removal of the goods by the defendants, that they removed fixtures that were a part of the building, for which acts plaintiff further asked for damages in the sum of $500, further setting up the fact to be that Mrs. Hattie E. Stacy was jointly liable with her son, as she knew that he was holding himself out to be the owner of the barber shop; that her said son acted for her in running said shop, and leasing same from the plaintiff. Defendant C. E. Stacy admitted renting the property at $100 per month, but claimed that he had been damaged on account of leaks to the extent of $400. Defendant Mrs. Hattie E. Stacy denied that she ever stood in the attitude of a tenant of the plaintiff, and further denied removal of any permanent fixtures from the building, or damage to the building. On final trial, the court peremptorily instructed the jury to find for the plaintiff for $300 against C. E. Stacy, and to find for the defendant Mrs. Hattie E. Stacy, to which action of the court the plaintiff duly excepted, and has perfected his appeal, and the case is properly before this court for adjudication.

There were the following agreements in the case:

"It is agreed that prior to the time of this lease, and subsequent to the time and during the life of this lease, the light contracts and the gas contracts stood in the name of Mrs. Hattie E. Stacy, and the bills were made out to Mrs. Hattie E. Stacy.

"It is agreed that C. E. Stacy owes Ben Kiam rent for the months of September, October, and November.

"It is agreed that the property levied upon was the property of Mrs. Hattie E. Stacy, and not the property of C. E. Stacy."

The first and second assignments of error are as follows:

"(a) Because the court erred in refusing to give the special charges as offered by the plaintiff and giving peremptory instructions in favor of the defendant Mrs. H. E. Stacy, because the plaintiff was entitled to have the issue submitted to the jury as to whether or not Mrs. Stacy had turned over the barber shop to her codefendant to handle and use as his own and her liability thereunder.

"(b) Because the court erred in refusing to give the special charge as offered by the plaintiff, and giving peremptory instructions in favor of the defendant Mrs. Hattie E. Stacy, because plaintiff was entitled to have the issues submitted to the jury and their findings thereunder as to whether C. E. Stacy was the agent of Mrs. Hattie E. Stacy, or was acting for her use and benefit in leasing the barber shop from plaintiff, and her liability and of the contents of the barber shop for the unpaid rents."

The requested instruction No. 3 was as follows:

"Gentlemen of the jury, if you find from all the facts and circumstances adduced in evidence in this case that the defendant C. E. Stacy was acting for his mother, as well as himself, in

leasing the premises in which the barber shop was situated, from the plaintiff, Ben Kiam, that the lease, while taken in the name of C. E. Stacy, was for the use and benefit of his mother, Mrs. Hattie E. Stacy, then you will find for the plaintiff, Ben Kiam, against both defendants for the amount as sued for by said plaintiff as rent, namely, $300, and also against the sureties on the replevin bond."

[1] The record nowhere reflects any testimony with reference to or that could in any wise raise an issue as to C. E. Stacy being the agent of Mrs. Hattie E. Stacy, outside of the testimony of Mrs. Stacy herself, and a careful examination of the testimony of Mrs. Stacy, in our judgment, to construe the same as a whole and most strongly against her, would, perhaps, only amount to a suspicion that she was interested in the rent received from said property, outside of the fact, which is admitted, that she was renting the fixtures and receiving therefor the sum of $35 per month for the same. Her testimony, which is not very lengthy, is as follows:

"I suppose I am one of the defendants in this cause. I don't remember whether any papers were read to me or not. On or about December 5, 1914, I gave my son permission to trade for some barber property. In trading for that barber shop, my son did not, for me, take over the lease that Mr. Canessa had with Mr. Kiam. I had nothing to do with the leasing, never gave anybody any authority to lease the building, and didn't know it was leased for a long time, so I had nothing to do with it then. I knew that the barber shop was being run, but I never gave him any authority to lease the building. I had nothing to do with the rent or anything; I just merely let him trade for the barber fixtures. I have seen better business women than I, of course. I have let my son attend to my business somewhat. I remember signing this lease that you show me; but, as to the leasing of the building, I never had anything to do with it. I never at any time paid the rent on that barber shop over there. That has always been in the charge and control of my son, C. E. Stacy. I have always left those matters to him, in the barber shop. He has not acted for me as my agent in everything, but in regard to that barber shop. In regard to that barber shop, he has full charge and control. I gave my consent to the papers that were signed, of course. I owned the barber shop; that is, the furniture and fixtures. Of course, I got some of the money from the business, and he got some of it. He paid the rent, of course, for the building out of it, didn't pay it very well, I don't think. The business never had paid really very well, because it took very nearly all to pay the help and the rent. Of course, I have got a little out of it. I put up the money for it in the first place.

"Before the barber shop was closed up, of course my son told me about what it was doing some of the time. Of course not all the time, because I didn't see him all the time. I did not know after Mr. Alexander left here, and that old lease was canceled, that three years lease, that for two or three months there was no written lease from Mr. Kiam at all, I did not know anything about the leasing at all. I left all that to my son. I don't remember that he reported to me, after he got that written lease, that he had a new lease with Mr. Kiam; that the old lease had been done away with. All I remember was that he had to pay for the use of the building, paid the lease right up to the time of the storm when it was damaged. I did not tell him that he ought not to pay full rent at that time. I do not remember the name now, but I know when the lease was made and $100

would be rent. I don't remember whether he showed me a copy of the lease, now. I wouldn't say that he did, because I don't remember just now. My memory is not as good as it used to be, of course. I heard my son say that under that lease Corte was to pay $100 a month over to Mr. Kiam. I heard him say he was paid that $100 a month, and I expect he had kept it up right along. Occasionally I got some money myself from the building. I don't remember now whether I got some money from the barber shop up till last August, I guess not. It wasn't doing very much; took it all to pay rent; hardly paid rent and the help. I couldn't tell whether it was hardly paying rent last September, not that. I couldn't say what it had been doing three or four months before November. My son did not tell me that he wasn't able to pay the rent. I don't remember just now whether he gave me any money at all those months or not. Of course, I got a little money out of him occasionally; but I don't remember whether it was for that or not. I don't remember just what he did about the moneys from the barber business, because I get money out of it occasionally, and I don't pay no attention to what it is for. He is running the business himself. I expect I saw this lease that my son made with Mr. Corte on or about March 1, 1915. He showed me different things, but I don't remember.

"Mr. Stacy rented that building himself, I had nothing to do with it whatever. I gave my son my consent to trade some land for some barber fixtures. I had no interest in the shop. I didn't run it at all. It was just the same, money for the land or my fixtures, or stuff that I let him use. My son told me that he would let Corte take this stuff and run it, and that Corte would pay me $35 a month for the use of my stuff. I didn't assume any obligation for the payment of the rent of that barber shop and wasn't in that business. I didn't authorize anybody to tear up Mr. Kiam's building, or the wainscoting out, or any glass, or any partition. I wouldn't do anything of that kind. I simply recall giving a replevin bond, to get the stuff out of there, to the sheriff. I had nothing to do with paying the gas bill. I did not sign up a contract for the gas bill and the light bill. My son did not do that with my permission and consent, never said anything about it. There was never any gas bills or light bills paid by me."

As said before, under our view, the testimony of Mrs. Stacy, not corroborated by any other fact or circumstance, was insufficient to raise the issue, in order to have the jury pass on the same, and therefore we find no error in the action of the court in giving a peremptory instruction. In the testimony of Mrs. Stacy, the only fact, or at least the strongest fact, which would tend to raise the issue of an agency, was apparently that she was interested in the proceeds derived from the operation of the barber shop; but she explains this in a way which renders it uncertain whether she ever received any remuneration for her fixtures, which it is admitted she owned, and which she had rented and was to receive for the same the sum of $35 per month. As we view the matter, there was no error in the court's action, and the assignments are overruled.

By the third, fourth, fifth, and sixth assignments of error, complaint is made of the action of the lower court as follows: (a) Because the court erred in refusing to allow the plain-

tiff to introduce in evidence a bill of sale dated December 17, 1914, given by D. Canessa and A. G. Corte to Mrs. Hattie E. Stacy, and transfer of lease to Mrs. Hattie E. Stacy, dated December 15, 1915. (b) Because the court erred in refusing to allow the plaintiff to introduce in evidence a lease dated January 10, 1913; same being between C. A. Alexander and Corte & Conessa. (c) Because the court erred in refusing to allow the plaintiff to introduce in evidence a lease dated March 1, 1915, between A. J. Corte and Mrs. Hattie E. Stacy by C. E. Stacy. (d) Because the court erred in allowing the lease between Stacy & Kiam, dated April 1, 1915, to be used in evidence only as to C. E. Stacy, and not considered as to Hattie E. Stacy.

[2-4] The leases between Alexander, Canessa, and Corte not being between parties. to this suit, and being dated January 10, 1915, more than two years before the lease in controversy, were properly excluded. The assignment of the lease from D. Canessa and A. G. Corte referred to a lease held by a party other than the plaintiff, and hence was irrelevant and immaterial, for the reason that it was agreed at the outset, by the parties in the case, that the property levied upon under the distress warrant was the property of Hattie E. Stacy, and not the property of C. E. Stacy. With reference to the introduction of the lease between Ben Kiam and C. E. Stacy, dated April 1, 1915, being introduced as against Hattie E. Stacy, the said Hattie E. Stacy's name does not appear in the said lease, and therefore we cannot find or see error in the action of the court in his ruling. The assignments have been carefully considered, and we find each of them without merit, and they are therefore overruled.

The action of the lower court is called in question as being error, by the seventh assignment of error, in refusing to submit to the jury the issue as to whether defendants had improperly removed any fixtures from plaintiff's building, and in the eighth assignment of error complaint is made that there was error in refusing to submit to the jury any issue in regard to damages done to plaintiff's building by defendants in removing the contents therefrom.

We have examined the record, and find no testimony to show that the defendant Hattie E. Stacy wrongfully removed the fixtures from the building, or injured the building in any manner, and therefore we see no error in the action of the court in refusing to submit such issue to the jury.

The record reflects that a fair and impartial trial of the case has been had, that the appellant's rights have been carefully guarded by the lower court, and we find no error in its action, and therefore the judgment of the lower court is in all things affirmed.